E-FILED
Monday, 18 April, 2011  04:41:56 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

KELLY MIXON,                          )
                Plaintiff,            )
                             )
        v.                            )          Case No. 10-1264
                             )
PEORIA COUNTY, et al.,                )
                Defendants.           )

## MEMORANDUM IN SUPPORT OF
## DEFENDANT OFFICERS' MOTION TO DISMISS

Now come the Defendants, DENISE CARTER, TORRA'E BURNETT, STEVEN

DEARING, HEATHER MILLER, GARY BUHS, TRENTON GUSTAFSON and COREY

HOSEA, by and through their attorneys, KEVIN W. LYONS, State's Attorney of Peoria County,

and MELINDA L. MANNLEIN, Assistant State's Attorney, and move to dismiss Count I of

Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants state as follows:

**I.**        **Plaintiff Fails to State a Claim for Unconstitutional Conditions of Confinement**

Count I of Plaintiff's Second Amended Complaint is directed at Defendants Denise

Carter, Torra'e Burnett, Steven Dearing, Heather Miller, Gary Buhs, Trenton Gustafson and

Corey Hosea ("Defendant Officers") and alleges that they subjected her to unconstitutional

conditions of confinement. **Doc. 23**, paras. 61-64.[1] The Supreme Court has held that the Due

Process Clause, rather than the Eighth Amendment, governs challenges to the conditions of

---

[1] In Plaintiff's Second Amended Complaint she labels two paragraphs as "62". **Doc. 23**, p. 5 (where paragraphs are labeled 61, 62, 63, 62). For the purposes of this motion, Defendants will refer to the second paragraph that Plaintiff labels "62" as "64" since the second paragraph "62" should be labeled "64." While Plaintiff labels the paragraph *after* the second "62" as "64", as well, that paragraph is in Count II, which is directed against another defendant and is not addressed in this motion. *See Id*., p. 6.

confinement of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). A pretrial detainee is entitled to protections that are "at least as great as the Eighth Amendment protections available to a convicted prisoner," *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998), *quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983), and "there is little practical difference between the two standards." *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). Generally, under both the Eighth and Fourteenth Amendment standards, the plaintiff has the burden of showing: (1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to her health or safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Deliberate indifference entails something more than mere negligence, *Id*., *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and is comparable to criminal recklessness, shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (internal citations omitted). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

More specifically, "liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'" *Youngberg*, 457 U.S. at 316, *quoting Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18 (1979). Bodily restraints may be used on pretrial detainees when there is a legitimate penological or medical reason for the use, such as suicidal detainees who pose a threat to themselves. *Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995); *see also Youngberg*, 457 U.S. at 320 ("[T]here are occasions in which it is necessary for the State to restrain the movement of residents - for example, to protect them as well as others from violence."). While "[l]ong-term

restraint decisions should be made by psychiatric personnel," *Wells v. Franzen*, 777 F.2d 1258, 1262 (7th Cir. 1985), *citing Youngberg v. Romeo*, 457 U.S. 307, 324, n. 30 (1982), and "[s]horter-term decisions are appropriately made by nurses and non-psychiatric physicians. . . . *[I]n emergencies it may not be possible to contact medical personnel, and liability cannot be imposed on lay prison employees when circumstances dictate that immediate action be taken*." *Id*. (emphasis added). The nature and duration of the restraint must bear some reasonable relation to the purpose for which it was prescribed. *Id*. (emphasis added); *see also Youngberg*, 457 U.S. at 320; *Wolfish*, 441 U.S. at 539. ("[I]f a particular condition or restriction of a pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"). "Courts must be mindful that these inquiries [into the conditions of confinement of pretrial detainees] spring from constitutional requirements and that judicial answers must reflect that fact rather than the court's idea of how best to operate a detention facility." *Wolfish*, 441 U.S. at 539.

The Seventh Circuit has recently determined that a pretrial detainee's claim of unconstitutional conditions of confinement regarding the period between the detainee's arrest and her probable cause hearing are to be analyzed under the Fourth Amendment, using the objectively unreasonable standard. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006); *Williams v. Rodriguez*, 509 F.3d 392, 402-04 (7th Cir. 2007). In the Fourth Amendment context, the "reasonableness" inquiry is an objective one. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intention or motivation." *Id*. "[T]the deliberate indifference standard under the Eighth and Fourteenth Amendments requires a higher showing on a plaintiff's part than is necessary to prove an officer's conduct was

'objectively unreasonable under the circumstances.'" *Williams*, 509 F.3d at 403, *quoting Lopez*, 464 F.3d at 720. However, as addressed above, most relevant case law in the area of restraints is couched in terms of due process. Defendant Officers are not aware of case law where the Seventh Circuit has addressed what is "objectively unreasonable" in the context of the use of restraints on pretrial detainees in a jail, and pattern jury instructions for objectively unreasonable conditions of confinement have likewise not yet been developed. *See, e.g.,* **7th Cir. Pattern Jury Instr. Civ. 7.10** (2005 rev.) (addressing conditions of confinement and indicating need for deliberate indifference).

For arrestees claiming their Fourth Amendment rights were violated by unconstitutional conditions of confinement in the context of indifference to their medical needs, the Seventh Circuit identified four factors that are relevant for ascertaining whether a defendant's conduct was objectively unreasonable: (1) whether the officer had notice of the arrestee's medical need, either by word or observation; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests. *Williams*, 509 F.3d at 403, *citing Sides v. City of Champaign*, 496 F.3d 820, 827-28 (7th Cir. 2007). Analogizing those requirements to this case, Plaintiff must at the very least sufficiently allege that Defendant Officers had *notice* that the conditions of Plaintiff's confinement in the restraint chair for eighteen hours posed a substantial risk to Plaintiff's health. *See* **Doc. 23**, para. 61 ("The conditions of Plaintiff's confinement in the restraint chair for 18 hours posed a substantial risk to Plaintiff's health."). Though not dealing with conditions of confinement, for claims of excessive force under the Fourth Amendment,[2] the

---

[2] Of course, the Seventh Circuit has also recently ruled in *Forrest v. Prine*, 620 F.3d 739, 744 n. 4 (7th Cir. 2010), that the *Fourteenth Amendment*, rather than the Fourth Amendment, applied to an excessive force claim made by a pretrial detainee *who had not yet been arraigned*, which suggests a possible retreat from its reasoning in *Lopez*, 464 F.3d 711, *Williams*, 509 F.3d 392, and *Sides*, 496 F.3d 820.

factors "generally relied on" include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Wilson v. Williams*, 83 F.3d 870, 876 (7th Cir. 1996); *see also* **7th Cir. Pattern Jury Instr. Civ. 7.09** (2005 rev.). Feasibly, then, the need for the application of restraints would be a factor to consider in determining the objective reasonableness of the conduct of the Defendant Officers in this case. *See Id*.

### A.  Plaintiff fails to sufficiently allege individual acts of Defendant Officers

Regardless of the applicable standard, the doctrine of *respondeat superior* does not apply to § 1983 suits. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). Rather, to properly state a claim under § 1983, Plaintiff must allege personal involvement of each Defendant Officer in the deprivation of the constitutional right. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009); *see also Payne for Hicks v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."); *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989) ("[T]here is no doctrine of superior's liability in § 1983 actions; instead, the official must actually have *participated in* the constitutional wrongdoing."). Consequently, Plaintiff must sufficiently allege that personal acts of each Defendant Officer violated her constitutional rights.

### 1.  Plaintiff fails to state a claim against Carter, Burnett and Dearing

With regards to Defendants Carter, Burnett and Dearing, Plaintiff alleges that "[t]he Peoria police officer that transported Plaintiff to the Jail informed the officers receiving Plaintiff

that Plaintiff had mental issues and could possible[sic] be a suicide risk." **Doc. 23**, para. 16. Presumably as a result of this information, Plaintiff then alleges that Defendant Carter removed her clothing, gave her a blanket, and put her in the R2 cell, *Id*. at para. 18. Plaintiff alleges that she then became upset and began hitting her head on the cell door window, *Id*. at para. 21, at which point Defendants Carter and Burnett placed her in a restraint chair at Defendant Dearing's order. *Id*. at paras. 22-23. In other words, Plaintiff alleges that, based on information from a Peoria Police officer, Defendant Carter placed Plaintiff on suicide watch, and that when Plaintiff, a person who to the best knowledge of Defendants Carter, Burnett and Dearing was suicidal, attempted to cause physical harm herself by repeatedly banging her head against a door, Defendant Dearing ordered Defendants Carter and Burnett to place her in the restraint chair due to this emergency situation. *See Id*. at paras. 1-23; *see also, e.g., Wells*, 777 F.2d at 1262.

These are the only personal acts that Plaintiff alleges in her entire Complaint regarding Defendants Carter, Burnett and Dearing. *See Id*. at paras. 1-64. She does not allege that they had knowledge of what any of the other Defendant Officers did or did not do, or of Plaintiff's condition at any other time, nor does she allege that the Peoria Police officer is not a reasonably reliable witness regarding Plaintiff being a suicide risk. *See Id*. Rather, she alleges that she was being treated for depression, *Id*. at para.11, and that in an emergency situation, Defendants Dearing, Carter and Burnett reasonably attempted to stop Plaintiff from physically injuring herself. *See Id*. at paras. 1-24. As Plaintiff has alleged that she was not seen by medical personnel until approximately six and a half hours after she was placed in the restraint chair by Defendants Carter and Burnett, *Id*. at paras. 22 & 35, Plaintiff cannot seriously also be alleging that it would have been more reasonable for these Defendants to have allowed Plaintiff to beat her head against a door for *six and a half hours* until a medical professional came to examine

her, rather than restraining her for her own safety, which feasibly is part of their constitutional duty to provide for her reasonable safety. *See, e.g., Collignon v. Milwaukee County*, 163 F.3d 982, 990-91 (7th Cir. 1999) (discussing suicide watch as "a preventative safety measure that may be part of a state actor's constitutional obligation to provide reasonable safety to a detainee"). The only serious threat to Plaintiff's health to which these Defendants were put on notice was caused by Plaintiff herself, and they responded accordingly. Thus, Plaintiff has not sufficiently alleged that Defendants Carter, Burnett and Dearing subjected her to unconstitutional conditions of confinement, and Count I must be dismissed, with prejudice, against them.

Additionally, to the extent Plaintiff has alleged that Defendant Dearing was acting in a supervisory capacity by ordering Defendants Carter and Burnett to place Plaintiff in the restraint chair, she has not sufficiently alleged his involvement with the conduct of any of the other officers named in this lawsuit -- Defendants Miller, Buhs, Gustafson and Hosea -- to be liable for their actions. She does not allege that Defendant Dearing had any personal involvement with or knowledge of any of the other Defendant Officers' conduct involving the Plaintiff, nor that he ordered them to do anything. *Davis v. Zirkelbach*, 149 F.3d 614, 619 (7th Cir. 1998) ("Davis has made no showing that Gann had any knowledge whatever about this particular incident; thus, he cannot show that Gann intentionally violated his constitutional rights."); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001), *citing Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir.1997) ("That is, 'to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct.'"). Therefore, Count I of her Second Amended Complaint must be dismissed, with prejudice, against him.

### 2.   Plaintiff fails to state a claim against Miller, Buhs and Gustafson

As explained above, the emergency situation of Plaintiff attempting to harm herself justified her reasonable placement in the restraint chair to prevent her from injuring herself. Under the due process clause, the Seventh Circuit found that "emergency situations cannot justify confinement for *several days* without a proper determination by the appropriate health professional." **Wells**, 777 F.2d at 1262 (emphasis added). Certainly, it would also be reasonable for an emergency situation to justify a person being confined for *several hours*, as Plaintiff has alleged here, **Doc. 23** at para. 51 ("Altogether, Plaintiff spent about 18 hours strapped in the chair."), especially given the fact that Plaintiff was visited by a medical professional within six and a half hours of being placed in the restraint chair, *Id*. at paras. 35, and again another five hours later. *Id*. at para. 45. Moreover, "[c]orrectional officers are not required to provide comfortable jails, even for pretrial detainees." **Tesch v. County of Green Lake**, 157 F.3d 465, 476 (7th Cir.1998). "Because there are more inmates than jailers at every facility, it is impossible for a prisoner or a pretrial detainee to expect an immediate response from jail officials for every request made." *Id*.

Plaintiff alleges that Defendants Miller, Buhs and Gustafson walked by Plaintiff's cell from approximately 10:00 p.m. to 4:20 a.m. and did not make reasonable attempts to learn her condition and ignored her requests to use the phone, get a drink of water, get a clean blanket or use the restroom. **Doc. 23** at paras. 30-33. Additionally, with regards to Defendant Buhs, Plaintiff alleges that she asked him if she could use the restroom and that he told her to use it on herself. *Id*. at paras. 27-28. However, Plaintiff's requests were not completely ignored. While she may not have gotten her clean blanket as speedily as she would have liked, she was given a clean blanket. *Id*. at para. 34; *see also, e.g., Tesch*, 157 F.3d at 476. Plaintiff's allegations regarding

telephone calls likewise do not reach a constitutional level, as Plaintiff's does not allege that the denial of telephone privileges impeded her access to an attorney. *Murphy*, 51 F.3d at 718, *citing Tucker v. Randall*, 948 F.2d 388, 390-91 (7th Cir. 1991).

In *Tesch,* 157 F.3d at 476, the Seventh Circuit held that a pretrial detainee who alleged that he was only provided water three times a day with meals during the forty-four hours he was held at the jail did not state a constitutional violation under due process analysis. Or to put it another way, under *Tesch* it is sufficient for a pretrial detainee to only receive water with meals. 157 F.3d at 476. In the instant case, Plaintiff alleges that Defendants Miller, Buhs and Gustafson did not provide her with water from 10:00 p.m. to 4:20 a.m., **Doc. 23** at paras. 30-33, which is not during a normal meal time, meaning that this allegation alone does not reach a constitutional level under the Fourteenth Amendment. *See Tesch*, 157 F.3d at 476. Though not binding on this Court, other courts have held that the lack of access to toilet facilities for a relatively short period of time, such as the six and a half hours alleged against these three Defendants, **Doc. 23** at paras. 30-33, is not sufficiently serious to state a claim of constitutional dimension under the Fourteenth Amendment. *See, e.g., Tabb v. Randle*, 2011 WL 589840 at *3 (S.D.Ill. 2011) (discussing lack of access to toilet facilities); *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1188 (10th Cir. 2003) (pretrial detainee held for five hours in cell lacking a toilet did not state a claim); *see also, generally, Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir. 1985)**, *citing Bell v. Wolfish*,** 441 U.S. 520, 542 (1979) ("The conditions of imprisonment, whether of pretrial detainees or of convicted criminals, do not reach even the threshold of constitutional concern until a showing is made of "genuine privations and hardship *over an extended period of time*.") (emphasis added). The Defendants would urge this Court to make similar findings under a reasonableness analysis.

Plaintiff was initially placed in the restraint chair by Defendants Carter and Burnett for her own safety, and an emergency situation should temporarily warrant such restraint, as long as a medical professional evaluates the continued need for restraints. ***See, e.g., Wells***, 777 F.2d at 1262. Plaintiff alleges that she was not first seen by a medical professional until 4:25 a.m. **Doc. 23** at para. 35. Although Plaintiff alleges that she was not subject to the most comfortable conditions before seeing the medical professional, it is reasonable that Defendants Miller, Buhs and Gustafson would seek to maintain the status quo and keep Plaintiff restrained from harming herself until medical professionals could evaluate her. The risk of her physically harming herself, as she already had by banging her head against the cell door window, ***Id***. at para. 21, could reasonably be deemed greater than the risk that might stem from her urinating on herself. For that matter, prior to a medical evaluation, Defendants Miller, Gustafson and Buhs would have no way of determining whether any of Plaintiff's requests to make phone calls or to use the restroom were simply ploys to get out of her restraints and try to harm herself again. Thus, her allegations do not sufficiently state a claim that her constitutional rights were violated by Defendants Miller, Gustafson and Buhs, as they were reasonably trying to prevent her from injuring herself, and Count I must be dismissed, with prejudice, against them.

3.  <u>Plaintiff fails to state a claim against Hosea</u>

With regards to Defendant Hosea, Plaintiff alleges that she asked him if she could use the restroom at approximately 8:00 a.m. and that he told her to use it on herself. **Doc. 23** at paras. 38-39. However, as explained above, a pretrial detainee cannot expect immediate results to every request, ***Tesch***, 157 F.3d at 476, and Plaintiff does not allege that she attempted to ask any other correctional officers if she could use the restroom at that time or that she asked Defendant Hosea more than once. ***Id***. at paras. 1-40. Contradictorily, she also alleges that she had not been given

anything to drink in approximately ten hours and had already urinated once during that period, making it less plausible that she would need to or could urinate by that point. *See Id.* at paras. 29 & 45*; see also, e.g., Atkins v. City of Chicago*, 631 F.3d 823, 829-32 (discussing plausibility of conflicting allegations of plaintiff). As explained above Defendant Hosea allegedly not allowing Plaintiff to use the restroom, when he reasonably believed she was retrained for her own safety, should not sufficiently allege a constitutional claim. Jail staff, like Defendant Hosea, should be entitled to reasonably rely on the judgment of medical professionals, *see, e.g., Perkins v. Lawson*, 312 F.3d 872, 875-76 (7th Cir. 2002), because the question of whether or when a particular treatment is warranted is a "classic example of a matter for medical judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996), *quoting Estelle*, 429 U.S. at 107. At the point when Plaintiff allegedly asked Defendant Hosea to use the restroom, she had been seen by a medical professional and had not been ordered to be released from the restraint chair. **Doc. 23** at para. 35. Defendant Hosea would have no way of knowing whether Plaintiff was merely using the excuse of needing to use the restroom as a ruse to get free from restraints so that she could attempt to harm herself again, and might reasonably wait for her to at least ask more than once -- or to check with a medical professional -- before immediately releasing her from restraints after one request to use the restroom. Hence, Count I of Plaintiff's Second Amended Complaint must be dismissed, with prejudice, against Defendant Hosea.

The only other personal act that Plaintiff alleges by Defendant Hosea is that he later unstrapped her wrists, which allowed her arms to be free so that she could cover herself with the blanket. **Doc. 23** at paras. 47-48. She also alleges that at this point she had been examined a second time by a medical professional, at which time she alleges that the medical professional told *her* that she would be released from the chair. *Id*. at para. 46. To the extent that Plaintiff is

attempting to allege that Defendant Hosea in some way ignored a medical determination regarding whether Plaintiff should be released from the chair, she does not sufficiently allege facts to support it. *See, e.g., Wells*, 777 F.2d at 1263, *citing Johnson ex rel. Johnson v. Brelje*, 701 F.2d at 1209 ("Restrictions imposed by guards, which are medically unjustifiable in connection with restraint . . . could infringe on plaintiff's due process rights."). She does not allege that the medical professional, or anyone else, told Defendant Hosea that Plaintiff must be released from the restraint chair or that Defendant Hosea had any knowledge whatsoever of what Plaintiff and the medical professional discussed. *Id*. at paras. 1-64. Quite frankly, if Plaintiff's arms being free meant that she could cover herself with a blanket, then she should likewise have been able to *unstrap* her waist and *unstrap* her feet. *See Id*. at paras. 24 & 47-48. Plaintiff does not allege that Defendant Hosea or any other person prevented her from unstrapping herself once her arms were released. *Id*. at paras. 1-64. From that point on, Plaintiff was partially responsible for the remainder of the time she allegedly spent restrained in the chair. *See, e.g., Sides*, 496 F.3d at 828 (noting that plaintiff was partially responsible for his lengthy detention outdoors). Consequently, alleging that Defendant Hosea unstrapped Plaintiff's arms and gave her the opportunity to unstrap the rest of her body could not possibly have violated her constitutional rights, and Count I of Plaintiff's Complaint must be dismissed, with prejudice, for failing to state a claim against Defendant Hosea.

### B.  Plaintiff fails to sufficiently allege Count I

In order to sufficiently state a claim against the Defendant Officers, Plaintiff's Complaint must "contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'. . . Nor

does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"
*Id*, *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 557 (2007). "[O]n a motion to
dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual
allegation.'" *Twombly*, 550 U.S. at 555, *quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In the instant case, Plaintiff alleges that "[t]he conditions of Plaintiff's confinement in the
restraint chair for 18 hours posed a substantial risk to Plaintiff's health," **Doc. 23**, para. 61, and
that the "Defendant-Officers were aware of the risks to Plaintiff's health and disregarded those
risks." *Id*. at para 62. In other words, Plaintiff essentially asserts the boilerplate language of the
elements found in the Seventh Circuit's Pattern Jury Instructions 7.10 and 7.14, regarding jail
conditions of confinement and deliberate indifference, respectively. However, Plaintiff never
articulates what this "substantial risk to Plaintiff's health" was, *Id*.; *see also paras*. 1-64, or how
any of the Defendant Officers could have become aware of it. *Id*. Generally, a "substantial risk"
means "risks so great that they are almost certain to materialize if nothing is done," *Brown v.
Budz*, 398 F.3d 904, 911 (7th Cir. 2005), *quoting Delgado v. Stegall*, 367 F.3d 668, 672 (7th
Cir.2004), and a medical condition is deemed to be objectively serious if it is "one that has been
diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person
would easily recognize the necessity for a doctor's attention." *Williams*, 509 F.3d at 401, *quoting
Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

As explained above, the only serious risk to her health that Plaintiff alleges with
particularity was due to her own actions of banging her head against the cell door window --
actions which the officers recognized were dangerous and tried to alleviate by placing Plaintiff in
the restraint chair. *See* **Doc. 23** at paras. 10-23. While she alleges that she suffered emotional
distress and subsequently developed a urinary tract infection, *Id*. at paras. 53-54, she does not

sufficiently allege how the Defendant Officers would or could have been put on notice of such risks -- either by her telling them or by observations, *Williams*, 509 F.3d at 403 -- or how those risks would outweigh the obvious risk of her harming herself. *Id*. at paras. 1-64. She does not allege, for instance, that she made complaints of any severe, long term pain that would have lead a reasonable officer to have found that her condition was serious enough to merit medical referral, *see, e.g., Murphy*, 51 F.3d at 719, other than the medical evaluation necessitated by her attempts to harm herself. She does not even allege that the restraints were applied carelessly, caused abrasions or bruises, or restricted blood flow to her limbs. *See, e.g., Wells*, 777 F.2d at 1261 (finding that allegations that restraints were applied carelessly, caused abrasions or bruises, and restricted blood flow to plaintiff were not sufficient to state a claim). For the reasons stated above, Plaintiff has failed to sufficiently allege facts that Defendants have acted unreasonably, let alone with deliberate indifference. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) ("Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless.") The Defendant Officers took reasonable measures to respond to the risk of Plaintiff harming herself, which does not amount to deliberate indifference, even if Plaintiff was ultimately harmed. *See* **7th Cir. Pattern Jury Instr. Civ. 7.14** ("If Defendant took reasonable measures to respond to a risk, then he was not deliberately indifferent, even if Plaintiff was ultimately harmed."). Thus, Count I of Plaintiff's Complaint must be dismissed against all Defendant Officers, with prejudice, for failure to state a claim.

## II.    Defendant Officers are entitled to Qualified Immunity

Even if the Court decides that Plaintiff has sufficiently pled a cause of action for unconstitutional conditions of confinement against any or all of the Defendant Officers, each

Defendant Officer is entitled to qualified immunity. Qualified immunity is a legal question properly determined by a court and answered in reference to the particular facts of the case. *Rokovich v. Wade*, 850 F.2d 1180, 1201-02 (7th Cir. 1987) (abrogated on other grounds); *see also Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004), *citing Saucier v. Katz*, 533 U.S. 194, 202 (2001). The purpose of qualified immunity is to avoid excessive disruption of governmental functions and to dispose of frivolous claims in the *early stages* of litigation. *Saucier*, 533 U.S. at 201. It "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id*.; *see also Anderson v. Creighton*, 483 U.S. 635, 656-57 (1987) (explaining immunity is a matter of law for the court to decide without deference to the jury's resolution-and preferably before the case goes to the jury).

Qualified or "good faith" immunity "shields the officers from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). "Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis v. Scherer*, 468 U.S. 183, 190 (1984). The test for qualified immunity is two-pronged, and the court may consider the prongs in whichever order it deems most prudent given the particular facts of the case. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

One prong of the inquiry requires the plaintiff to allege sufficient facts that, taken in the light most favorable to the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right. *Saucier*, 533 U.S. at 201. In other words, when an officer raises the defense of qualified immunity, the plaintiff bears the burden of showing that the officer violated a clearly established constitutional right. *Rakovich*, 850 F.2d at 1209, *citing Abel v. Miller*, 824 F.2d 1522, 1534 (7th Cir.1987). This may be achieved by showing either: (1) a "closely analogous case" that establishes the constitutional right; or (2) "evidence that the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts." *Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir. 1993), *citing Rice v. Burks*, 999 F.2d 1172, 1173-74 (7th Cir.1993); *McDonald v. Haskins,* 966 F.2d 292 (7th Cir.1992)

The other prong requires the court to determine whether the particular constitutional right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. In other words, the court assesses the objective legal reasonableness of the official's actions *at the time* of the alleged violation and asks whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Id.* at 202. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. If the right was clearly established, the government actor is not entitled to qualified immunity. Or put another way, Defendants are entitled to qualified immunity unless it was clearly established that their conduct was unconstitutional. *Pearson*, 129 S.Ct. at 812; *see also Mitchel*, 472 U.S. at 528 (officials are immune unless "the law clearly proscribed the actions" they took). Unless both prongs can be

proven, Defendants are entitled to qualified immunity. ***Jacobs v. City of Chicago***, 215 F.3d 758, 766 (7th Cir.2000).

Moreover, the doctrine "gives public officials the benefit of the doubt," ***Elliot v. Thomas***, 937 F.2d 338, 341 (7th Cir. 1991), and entitles correctional officers who exercise discretion to an "accommodation for reasonable error . . . because officials should not err always on the side of caution because they fear being sued." ***Hunter v. Bryant***, 502 U.S. 224, 229 (1991). Its purpose is to protect all but the plainly incompetent or those who knowingly violate the law. ***Malley v. Briggs***, 475 U.S. 335, 341 (1986). Furthermore, it protects those officials who act within the "hazy border" between the lawful and the unlawful, ***Brosseau v. Haugen***, 543 U.S. 194, 201 (2004), or where "no square holding" addresses the alleged violation. ***Narducci v. Moore***, 572 F.3d 313, 322 (7th Cir. 2009).

"The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. *It is sometimes difficult for an officer to determine how the relevant legal doctrine, here [unconstitutional conditions of confinement] will apply to the factual situation the officer confronts.*" ***Saucier***, 533 U.S. at 205 (emphasis added). "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." ***Id***. The Supreme Court cautions against the "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene. ***See, e.g. Graham v. Connor***, 490 U.S. 386, 393 & 396 (1989).

Thus, Defendants reassert their arguments that Plaintiff has not sufficiently alleged the personal acts of any defendant violated her constitutional rights. Additionally, Plaintiff cannot support the contention that Defendants were on notice that their conduct was clearly unconstitutional or that reasonable officers necessarily would have understood that the law

clearly prohibited them from temporarily restraining a suicidal detainee from harming herself. Even if the Court finds that mistakes were made by the Defendants, such mistakes, if made, were reasonable, given the totality of the circumstances involved. With the more recent Seventh Circuit precedent calling for application of the Fourth Amendment reasonableness standard to conditions of confinement for pretrial detainees prior to arraignment, *see Lopez*, 464 F.3d at 719; *Williams*, 509 F.3d at 402-04, there was greater potential for correctional officers to be uncertain of exactly how this new standard affected their previously lawful acts of restraining suicidal detainees in emergency situations. *See, e.g., Wells*, 777 F.2d at 1262.

In fact, it is impractical for officers to apply a different standard for conditions of confinement for detainees who have been arraigned and for detainees who have not been arraigned, as pretrial detainees who have not yet been arraigned can pose the same risk of harm to themselves as pretrial detainees who have been arraigned. *See Wilson v. Williams*, 83 F.3d 870, 876 (7th Cir. 1996) (discussing the impracticality of separate standards for convicted prisoners and pretrial detainees in reviewing challenged security practices because the two groups are held together in correctional facilities and there is no basis to conclude that pretrial detainees pose any lesser security risk than convicted inmates). Pretrial detainees are not marked as "arraigned" and "not arraigned" while being confined at a jail, nor does a correctional officer doing a visual check on a cell have a way of knowing which detainees were arrested with warrants and which were arrested on sight. As Plaintiff does not allege that any of the Defendant Officers were aware of her arraignment status, *see* **Doc. 23** at paras. 1-64, each Defendant should be protected from liability by qualified immunity. Accordingly, a motion to dismiss is appropriate and should be granted in favor of each Defendant Officer.

WHEREFORE, for all of the reasons stated above, Defendants, DENISE CARTER, TORRA'E BURNETT, STEVEN DEARING, HEATHER MILLER, GARY BUHS, TRENTON GUSTAFSON and COREY HOSEA, pray that Count I of Plaintiff's Second Amended Complaint be dismissed, with prejudice, and for all other relief that this Court deems just.

RESPECTFULLY SUBMITTED,

DENISE   CARTER,   TORRA'E   BURNETT, STEVEN   DEARING,   HEATHER   MILLER, GARY BUHS, TRENTON GUSTAFSON and COREY HOSEA,
Defendants

KEVIN W. LYONS,
State's Attorney of Peoria County

**s/ Melinda L. Mannlein**
Melinda Attorney Bar Number: 6288382
*Attorney for Defendants*
Peoria County Courthouse
324 Main Street, Room 111
Peoria, Illinois 61602
Telephone: (309) 672-6017
Fax: (309) 495-4914
E-mail: mmannlein@peoriacounty.org

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| KELLY MIXON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-1264 |
| | ) | |
| PEORIA COUNTY, et al., | ) | |
| Defendants. | ) | |

## CERTIFICATE OF COMPLIANCE

I, MELINDA L. MANNLEIN, Assistant State's Attorney of Peoria County, hereby certify that this Memorandum complies with the type volume limitation in Local Rule 7.1(B)(4)(b)(1). It contains 6,298 words, including all headings, footnotes, quotations, this certificate and the Certificate of Service.

**s/ Melinda L. Mannlein**
Attorney Bar Number: 6288382
*Attorney for Defendants*
Peoria County Courthouse
324 Main Street, Room 111
Peoria, Illinois 61602
Phone: (309) 672-6017
Fax: (309) 495-4914
E-mail: mmannlein@peoriacounty.org

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| KELLY MIXON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-1264 |
| | ) | |
| PEORIA COUNTY, et al., | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, MELINDA L. MANNLEIN, Assistant State's Attorney of Peoria County, hereby certify that on the 18th day of April, 2011, I caused a true and correct copy of the attached Memorandum in Support of Defendant Officers' Motion to Dismiss to be served upon Plaintiff's counsel by electronic notice.

**s/ Melinda L. Mannlein**
*Attorney for Defendants*
Melinda Attorney Bar Number: 6288382
Peoria County Courthouse
324 Main Street, Room 111
Peoria, Illinois 61602
Telephone: (309) 672-6017
Fax: (309) 495-4914
E-mail: mmannlein@peoriacounty.org
